## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DAVID DIAZ,                              )
                                         )
      Plaintiff,                   )
                                         )
        v.                        )    No. 20-1808C
                                         )    (Judge Tapp)
THE UNITED STATES,                       )
                                         )
      Defendant.                   )

### <u>DEFENDANT'S MOTION TO DISMISS</u>

                                  **BRIAN M. BOYNTON**
                                    **Acting Assistant Attorney General**

                                  **MARTIN F. HOCKEY, JR.**
                                  **Acting Director**

                                  **STEVEN J. GILLINGHAM.**
                                  **Assistant Director**

OF COUNSEL:

WENDY A. HARRIS
**Attorney, Commercial and**
**Appellate Division**
**U.S. Postal Service**
**475 L'Enfant Plaza, S.W.**
**Washington, D.C. 20260**

**JOSEPH A. PIXLEY**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**P.O. Box 480**
**Ben Franklin Station**
**Washington, D.C. 20044**
**Telephone: (202) 307-0843**
**Facsimile: (202) 307-0972**

May 13, 2021                        **Attorneys for Defendant**

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

STATEMENT OF THE ISSUES.................................................................................2

STATEMENT OF THE CASE....................................................................................3

    I.      Nature Of The Case ....................................................................................3

    II.     Statement Of Facts.....................................................................................4

          A.      The Contract...............................................................................4

          B.      Contract Letter Carrier..............................................................5

ARGUMENT ..............................................................................................................5

    I.      Standards Of Review ..................................................................................5

          A.  Jurisdiction.................................................................................5

          B.  Standards For Decision On Motion To Dismiss Under RCFC 12(b)(1) ...........7

          C.  Standards For Decision On Motion To Dismiss Under RCFC 12(b)(6) ...........7

    II.     Mr. Diaz Failed To Meet The Jurisdictional Prerequisites Required By The CDA, And Accordingly Count I Of The Complaint Should Be Dismissed For Lack Of Subject Matter Jurisdiction .........................................................................8

          A.      Mr. Diaz's Contract Claim is Governed By The CDA ...............................8

          B.      Mr. Diaz Failed To Meet The Jurisdictional Prerequisites Of The CDA ...............................................................................10

    III.    The Court Lacks Jurisdiction To Entertain Mr. Diaz's State Law Claim...............11

    IV.    Mr. Diaz's FLSA Claim IsTime-Barred ...................................................12

          A.      FLSA Statute Of Limitations...................................................12

          B.      Mr. Diaz Was Required To File His Lawsuit Before April 2018 To Be Timely.....................................................................................13

V.     Alternatively, Mr. Diaz's FLSA Claim Should Be Dismissed For Failure To
       State A Claim Upon Which Relief Can Be Granted.................................................13

       A.     Mr. Diaz Does Not Allege He Was Appointed To The Postal Service – He
              Is Not An Employee.....................................................................................14

       B.     Mr. Diaz's Rights Are Governed Exclusively By His Contract ................14

VI.    The Court Should Dismiss Mr. Diaz's Quantum Meruit Claim For Failure To
       State A Claim Upon Which Relief Should Be Granted ........................................14

       A.     Recovery In Quantum Meruit Can Only Occur When An Express Contract
              Is Invalid ......................................................................................................15

       B.     An Express Contract Precludes The Existence Of An Implied-In-Fact
              Contract.........................................................................................................16

       C.     Mr. Diaz Fails To Allege That His Contract Was Invalid  .......................16

CONCLUSION...................................................................................................................17

TABLE OF AUTHORITIES

Cases                                                                                           Page(s)

*Adams v. United States,*
   350 F.3d 1216 (Fed. Cir. 2003) ........................................................................... 12

*Alliant Techsys., Inc., v United States,*
   178 F.3d 1260 (Fed. Cir. 1999) ........................................................................... 10

*A&S Council Oil Co., Inc. v. Lader,*
   56 F.3d 234 (D.C. Cir. 1995) .................................................................................. 9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................... 8

*Atlas Corp. v. United States,*
   895 F.2d 745 (Fed. Cir. 1990) ............................................................................. 16

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................................... 8

*Biltmore Forest Broadcasting FM, Inc. v. United States,*
   555 F.3d 1375 (Fed. Cir. 2009) ........................................................................... 16

*Boyle v. United States,*
   200 F.3d 1369 (Fed. Cir. 2000) ............................................................................. 7

*Brown v. Strickler,*
   422 F.2d 1000 (6th Cir. 1970) ............................................................................... 7

*Cedars-Sinai Medical Center v. Watkins,*
   11 F.3d 1573 (Fed. Cir. 1993) ............................................................................... 7

*Chu v. United States*,
   773 F.2d 1226 (Fed. Cir. 1985) ............................................................... 14

*Cooke v. United States*,
   855 F.2d 848 (Fed. Cir. 1988) ................................................................. 12

*Dalton v. Sherwood Van Lines, Inc.*,
   50 F.3d 1014 (Fed. Cir. 1995) ................................................................. 9

*Darden v. United States*,
   18 Cl. Ct. 855 (1989) ............................................................................... 14

*Diversified Maint. Sys., Inc. v. United States*,
   103 Fed. Cl. 431 (2012) ........................................................................... 9

*Eastport S.S. Corp. v. United States*,
   372 F.2d 1002 (Ct. Cl. 1967) .................................................................. 6

*Embiata v.United States*,
   135 Fed. Cl. 213 (2017) ........................................................................... 9

*Fisher v. United States*,
   402 F.3d 1167 (Fed. Cir. 2005) ............................................................... 6

*Gov't Technical Servs., LLC v. United States*,
   90 Fed. Cl. 522 (2009) ............................................................................. 9

*H.L. Smith, Inc. v. Dalton*,
   49 F.3d 1563 (Fed. Cir. 1995) ................................................................. 10

*Harmon v. Superior Court*,
   307 F.2d 796 (9th Cir. 1962) .................................................................. 7

*Hopland Band of Pomo Indians v. United States*,
   855 F.2d 1573 (Fed. Cir. 1988) ............................................................... 12

*Indium Corp. v. Semi-Alloys, Inc.*,
   781 F.2d 879 (Fed. Cir. 1985) ................................................................. 7

iv

*Int'l Data Prods. Corp. v. United States*,
  492 F.3d 1317 (Fed. Cir. 2007) ......................................................................... 15, 17

*James v. Caldera*,
  159 F.3d 573 (Fed. Cir. 1998) ..................................................................................... 6

*Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*,
  525 F.3d 1299 (Fed. Cir. 2008) ................................................................................... 7

*King v. United States*,
  81 Fed. Cl. 766 (2008) ................................................................................................. 6

*Legritte v. United States*,
  104 Fed. Cl. 315 (2012) ............................................................................................. 12

*Lindsay v. United States*,
  295 F.3d 1252 (Fed. Cir. 2002) ................................................................................... 8

*Love Terminal Partners v. United States*,
  97 Fed. Cl. 355 (2011) ................................................................................................. 3

*Martinez v. United States*,
  333 F.3d 1295 (Fed. Cir. 2003) ................................................................................. 12

*Nager Elec. Co. v. United States*,
  368 F.2d 847 (Ct. Cl. 1966) ....................................................................................... 12

*Perri v. United States*,
  340 F.3d 1337 (Fed. Cir. 2003) ................................................................................. 15

*Raytheon Co. v. United States*,
  747 F.3d 1341 (Fed. Cir. 2014) ................................................................................. 11

*Reynolds v. Army & Air Force Exch. Serv.*,
  846 F.2d 746 (Fed. Cir. 1988) ..................................................................................... 7

v

*Rick's Mushroom Service, Inc. v. United States,*
   521 F.3d 1338 (Fed. Cir. 2008) ................................................................ 16

*Rutherford Food Corp. v. McComb,*
   331 U.S. 722 (1947) ................................................................................... 13

*Scheuer v. Rhodes,*
   416 U.S. 232 (1974) ..................................................................................... 7

*Schism v. United States,*
   316 F.3d 1259 (Fed. Cir. 2002) ............................................................... 16

*Seh Ahn Lee v. United States,*
   895 F.3d 1363 (Fed. Cir. 2018) ............................................... 14, 16, 17

*Souders v. S.C. Pub. Serv. Auth.,*
   497 F.3d 1303 (Fed.Cir.2007) ................................................................. 12

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998) ....................................................................................... 6

*Tetzlaff v. United States,*
   2015 WL7585333 at *8- *10 (Fed. Cl. 2015) ......................................... 13

*Tippett v. United States,*
   185 F.3d 1250 (Fed. Cir. 1999) ................................................................. 6

*Todd Constr., L.P. v. United States,*
   656 F.3d 1306 (Fed. Cir. 2011) ............................................................... 10

*Trauma Serv. Group v. United States,*
   104 F.3d 1321 (Fed. Cir. 1997) ............................................................... 16

*Trusted Integration, Inc. v. United States,*
   659 F.3d 1159 (Fed. Cir. 2011) ................................................................. 7

*United States v. Amdahl*,
   786 F.2d 387 (Fed. Cir. 1986) ............................................................... 15, 17

*United States v. Sherwood*,
   312 U.S. 584 (1941) ................................................................................ 5

*United States v. Testan*,
   424 U.S. 392 (1976) ................................................................................ 5

*Volmar Const., Inc. v. United States*,
   32 Fed. Cl. 746 (1995) ............................................................................ 11

Statutes

28 U.S.C. § 1491 ...................................................................... passim

29 U.S.C. § 201 ........................................................................ 1

29 U.S.C. § 255(a) ................................................................... 12

39 U.S.C. § 1001(a) (c) ........................................................... 14

41 U.S.C. §  601 ...................................................................... 4

41 U.S.C. § 7102(a)(2) ............................................................ 9

41 U.S.C. § 7103 ...................................................... passim

41 U.S.C. § 7104(a)(b) (1) ....................................................... 10, 11

41 U.S.C. § 7105 ...................................................................... 9

Rules

RCFC 12(b)(1) ......................................................................... 1, 7

RCFC 12(b)(6) ............................................................. passim

Regulation

48 C.F.R. § 2.101.5 ................................................................. 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **DAVID DIAZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 20-1808C** |
| | ) | **(Judge Tapp)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss plaintiff David Diaz's complaint for lack of subject-matter jurisdiction or for failure to state a claim upon which relief can be granted.

## INTRODUCTION

Plaintiff, David Diaz, a Contract Delivery Service (CDS) supplier, asserts four claims against the Postal Service, all of which must be dismissed for want of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. Mr. Diaz entered into a CDS agreement with the United States Postal Service (Postal Service or USPS) to deliver mail in rural areas of Florida as an independent contractor. Mr. Diaz nonetheless alleges that he was misclassified as an independent contractor and should have been treated as an employee for purposes of pay. Specifically, Mr. Diaz alleges breach of contract (Count I), *quantum meruit* (Count II), unpaid minimum wage and overtime under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*., (Count III), and unpaid minimum wage and overtime under Florida State law (Count IV). Mr. Diaz's claims lack merit and his complaint is subject to dismissal pursuant to RCFC 12(b)(1) or RCFC 12(b)(6).

First, Mr. Diaz's contract specifically invokes, and is governed by, the Contract Disputes Act (CDA), 41 U.S.C. § 7103 *et seq.*  The CDA requires a contractor to first submit a written claim to a contracting officer and receive a final decision as a jurisdictional prerequisite to filing suit in the Court of Federal Claims.  Mr. Diaz has failed to do so, and, as a result, this Court lacks jurisdiction over his breach of contract claim (Count I), and it must be dismissed.  Second, Mr. Diaz's claim based upon state law (Count IV) must be dismissed as this Court only has jurisdiction over claims founded upon the Constitution, statutes, or regulations of the United States, and not upon state law.  Third, Mr. Diaz's FLSA claim (Count III) should be dismissed for lack of jurisdiction because it is time-barred.  Alternatively, it should be dismissed for failure to state a claim under RCFC 12(b)(6) because Mr. Diaz is not an employee of the Postal Service, and the FSLA pertains only to employees of a Federal agency.  Finally, the Court should dismiss Mr. Diaz's *quantum meruit* claim (Count II), which is based upon a theory of implied contract, for failure to state a claim, because his express contract with the Postal Service precludes it.

## STATEMENT OF THE ISSUES[1]

1.      Whether this Court should dismiss plaintiff's breach of contract claim (Count I) for lack of subject matter jurisdiction because the plaintiff  failed to exhaust his administrative remedies under the CDA.

2.      Whether the Court should dismiss plaintiff's State law claim (Count IV) for lack of subject matter jurisdiction.

3.      Whether the Court should dismiss plaintiff's FLSA claim (Count III) for lack of subject matter jurisdiction because it is time-barred.

---

[1] We will address the jurisdictional issues first rather than the numerical order of the claims as presented by Mr. Diaz in his complaint.

2

4.      Alternatively, whether the Court should dismiss plaintiff's FLSA claim (Count III) for failure to state a claim upon which relief can be granted because he can point to no authority that mandates such relief.

5.      Whether the Court should dismiss plaintiff's *quantum meruit* claim (Count II) for failure to state a claim upon which relief can be granted because he can point to no authority which mandates such relief.

## STATEMENT OF THE CASE

## I.      Nature Of The Case

Mr. Diaz brings this action against the Postal Service for breach of contract (Count I), *quantum meruit* (Count II), violations of both the minimum wage and unpaid overtime wage provisions of the FLSA (Count III), and violations of the Florida Minimum Wage Act (FMWA), Fl. Stat. § 448.10, and Article X, § 24(a) of the Florida Constitution.  *See* Compl. at 1 (¶ 1), 2 (¶ 8), 6-8 (Count I), 9- 10 (Count II), 10-12 (Count III), and 12-14 (Count IV).[2]  By way of relief, Mr. Diaz variously seeks compensatory damages, "special damages," liquidated damages, lost wages, including compensation for unpaid overtime and minimum wages, and attorneys' fees.  *See* Compl. at 9, 10, 12, 13-14, prayers for relief.

---

[2] "Compl." refers to Mr. Diaz's complaint.  *See* ECF No. 31.  Mr. Diaz originally filed his complaint in the United States District Court for the Middle District of Florida, *see* ECF No. 1, which was later transferred to this Court.  *See* ECF Nos. 23-25.  The most recent version of the complaint includes contract documents, but these are blurry and difficult to read.  *See* ECF No. 31.  As referenced in Rule 9(k), a party pleading contract claims "must identify the substantive provisions of the contract . . . on which the party relies," or "annex . . a copy of the contract[.]" RCFC 9(k).  We have attached excerpts from Mr. Diaz's contract with the Postal Service, referenced as "Def. Ex. A_," which are more legible, and include relevant provisions.  *See also e.g., Love Terminal Partners v. United States*, 97 Fed. Cl. 355, 385 (2011) (citation omitted) ("a party may submit a copy of [a] document to support or oppose a motion to dismiss as long as the document is 'central' to the complaint").

3

II.     **Statement Of Facts**

A.      **The Contract**

On or about March 13, 2009, Mr. Diaz executed a CDS contract with the Postal Service

to deliver mail in rural areas of Florida (contract).  Compl. at 3 (¶¶ 11, 12), 16; *see* Def. Ex. A at

A1.  The period of performance of the contract was from April 1, 2009, until March 31, 2015.

*See* Compl. at 16; Def. Ex. A. at A1.  The contract provided a contract rate of $63,606.98 per

year, with a count of 745 mail boxes.  *Id*.  The process for receiving additional payments due to

service changes, extra trips required of a supplier, and detours are also detailed in the contract.

*See*, *e.g.*, Def. Ex. A at A5.  Mr. Diaz alleges that he worked for a period of six years for the

duration of the contract.  *See* Compl. ¶ 22b.

The CDS contract is an agreement between the Postal Service and an individual or

company to deliver and collect mail along specific routes set forth in a statement of work.  *See*

*e.g*., Def. Ex. A at A3-A5.  CDS "suppliers" are not Postal Service employees, but are

independent contractors, and their compensation is based upon the delivery trips made each day.

*See id.* at A1-A5, A9, A7 (¶11 (f)(i)).  The contract expressly stated, in relevant part, that an

employee of the Postal Service cannot be a supplier: "Persons ineligible to become suppliers

include: (1) Employees of the U.S. Postal Service."  *See id*. at A7 (¶ 11 (f)(i)).  Mr. Diaz is the

"supplier" in the contract.  *See*, *id*. at A1.

The CDS contract at issue contains an unambiguous "Claims and Disputes" clause that

expressly states:

> This contract is subject to the Contracts Disputes Act of 1978 (41 U.S.C. 601-613)
> ("the Act" or "CDA"). Except as provided in the Act, all disputes arising under or
> relating to this contract must be resolved under this clause.

*See id*. at A6 (¶ C.3.4).  In relevant part, the disputes clause informed Mr. Diaz, the supplier, that

in any dispute arising under the contract, and specifically those related to service changes or for extra trips, to be in accordance with the CDA, must first be submitted as a "claim" in writing, to a Postal Service contracting officer who will then issue a final decision.  *See id*.  For claims over $100,000 (as here), the claim must additionally be certified.  *Id.*  In his complaint, Mr. Diaz does not allege he filed a claim with a contracting officer, nor does he allege that a contracting officer issued a final decision, or failed to make a decision within the required time period.

### B.      Contract Letter Carrier

Mr. Diaz alleges that, despite having a contractual relationship with the Postal Service, he should have been treated as an employee, and that he was misclassified as an independent contractor because he did the same work as employee Postal Service mail carriers.  *See* Compl. ¶ 10.  He further alleges that, as the population grew in rural areas of Osceola County, Florida, the number of mailboxes he had to service increased "without a proportionate increase in his wages."  *See id*. ¶ 13.  He further alleges that he was required to work more than 40 hours per week without receiving overtime pay or minimum wage level compensation.  *See id*.  This suit followed.

### ARGUMENT

## I.      Standards Of Review

### A.      Jurisdiction

"[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued. . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Testan*, 424 U.S. 392, 399 (1976) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941).  "Subject matter jurisdiction is a threshold issue that must be determined at the outset of a case."  *King v. United States*, 81 Fed. Cl. 766, 768 (2008) (citing *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)).

The Tucker Act delineates this Court's jurisdiction.  28 U.S.C. § 1491 (2012).  The applicable portion of the Tucker Act states: "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any act of Congress or any regulation or an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).

The Tucker Act concurrently "waives the Government's sovereign immunity for those actions."  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) (citations omitted).  The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims.  *Id*.  "[T]o come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."  *Id*.

In other words, the source underlying the cause of action must be money-mandating, in that it "can fairly be interpreted as mandating compensation by the Federal Government."  *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967); *see also Tippett v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999) ("[T]he plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States'") (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998)).  If no money-mandating source supports the cause of action, this Court lacks subject matter jurisdiction and must dismiss the action.  *See Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin.*, 525 F.3d 1299, 1308 (Fed. Cir. 2008).

### B.      Standards For Decision On Motion To Dismiss Under RCFC 12(b)(1)

Mr. Diaz, as plaintiff, bears the burden of establishing that jurisdiction exists by a preponderance of the evidence.  *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).  Rule 12(b)(1) motions may raise "facial" or "factual" challenges to the Court's jurisdiction.  *Cedars-Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993).  When a Rule 12(b)(1) motion challenges the facial sufficiency of the complaint to establish subject matter jurisdiction, the Court must accept a plaintiff's "well-pleaded factual allegations as true and draw all reasonable inferences" in its favor.  *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000); *accord Cedars-Sinai Medical Center*, 11 F.3d at 1584 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  When the absence of a viable claim appears on the face of the complaint and is obviously not curable, summary dismissal conserves both the Court's and the litigants' resources.  *Brown v. Strickler*, 422 F.2d 1000, 1002 (6th Cir. 1970) (quoting *Harmon v. Superior Court*, 307 F.2d 796, 797 (9th Cir. 1962); *see also Cedars-Sinai Medical Center*, 11 F.3d at 1584 (when a party challenges jurisdiction, the court may consider evidence outside the pleadings to establish predicate jurisdictional facts); *see also Indium Corp. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (same).[3]

### C.      Standards For Decision On Motion To Dismiss Under RCFC 12(b)(6)

The granting of a motion to dismiss for failure to state a claim under RCFC 12(b)(6) "is appropriate when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).  In ruling upon an RCFC

---

[3] Upon this basis and for the convenience of the Court and the parties, we submitted relevant provisions of the contract, Def. Ex. A.

12(b)(6) motion to dismiss, the Court must accept as true the complaint's undisputed factual

allegations and should construe them in a light most favorable to plaintiff.  To survive a motion

to dismiss pursuant to RCFC 12(b)(6), the complaint's "[f]actual allegations must be enough to

raise a right to relief above the speculative level, on the assumption that the allegations are true

(even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Moreover, the grounds of entitlement to relief "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Id*. (citations omitted).

Courts adopt a two-prong approach of "identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth[,]" and then determining whether the

remaining well-pleaded factual allegations, if any, "plausibly give rise to an entitlement to

relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II.     Mr. Diaz Failed To Meet The Jurisdictional Prerequisites Required By The CDA, And Accordingly Count I Of The Complaint Should Be Dismissed For Lack Of Subject Matter Jurisdiction

### A.     Mr. Diaz's Contract Claim is Governed By The CDA

Mr. Diaz's contract expressly states that it is subject to the CDA, and states that "all

disputes arising under or relating to this contract" must resolved under that provision.  *See* Def.

Ex. A at A45 (¶ C.3.4).  Under the CDA, a contractor must first file a written claim with the

relevant contracting officer, and for claims above $100,000 that claim must be certified. 41

U.S.C. § 7103.  Upon receiving a final decision, or if a final decision is not made within the

required time period, a Postal Service contractor may then appeal the denial of his or her claim to

the Postal Service Board of Contract Appeals, *see* 41 U.S.C. § 7105(d), or to this Court.  *Id*. at

§ 7104(b)(1).  The failure of a Postal Service contractor to comply with these specific

administrative presentment requirements of the CDA are enough to strip this Court of

8

jurisdiction.  *See Embiata v. United States*, 135 Fed. Cl. 213, 218 (2017).  Mr. Diaz does not

allege that he submitted a certified claim to a Postal Service contracting officer, or that he

obtained a final decision, both jurisdictional prerequisites to bringing a claim in this Court.

The CDA applies to certain types of contracts with the Federal Government, including

contracts for "the procurement of services[.]" 41 U.S.C. § 7102(a)(2). The CDA provides a

procedure for resolving any "claim by a contractor . . . relating to a contract[.]" 41 U.S.C.

§ 7103(a)(1). "When the [CDA] applies, it provides the exclusive mechanism for dispute

resolution; the [CDA] was not designed to serve as an alternative administrative remedy,

available at the contractor's option." *Dalton v. Sherwood Van Lines, Inc*., 50 F.3d 1014, 1017

(Fed. Cir. 1995). The exclusivity of the CDA is well-established:

> The Contract Disputes Act . . . appears to be the paradigm of a precisely drawn,
> detailed statute that preempts more general jurisdictional provisions. It purports to
> provide final and exclusive resolution of all disputes arising from government
> contracts covered by the statute. All claims by a contractor against the
> government relating to a contract covered by the CDA must be submitted first to
> the contracting officer for a decision.

*A&S Council Oil Co., Inc. v. Lader*, 56 F.3d 234, 241 (D.C. Cir. 1995) (quotations and citations

omitted); *see also Gov't Technical Servs., LLC v. United States*, 90 Fed. Cl. 522, 526-27 (2009).

Furthermore, this Court has long held that claims relating to breach of contract and overall

contract management or administration "must be brought under the CDA."  *See Diversified*

*Maint. Sys., Inc. v. United States*, 103 Fed. Cl. 431, 435 (2012) (citing *Dalton*, 50 F.3d at 1017).

Although the CDA does not define the term "claim," the United States Court of Appeals

for the Federal Circuit has adopted the definition in the Federal Acquisition Regulation (FAR).

*See, e.g.*, *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995).  The FAR generally

defines a claim as "a written demand or written assertion by one of the contracting parties

seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101.5.  The Federal Circuit has determined that "Congress' overall purpose to confer comprehensive jurisdiction under the CDA confirms that we should read the definition of 'claim' broadly."  *Todd Constr., L.P. v. United States*, 656 F.3d 1306, 1311 (Fed. Cir. 2011). Put another way, "[i]n defining the jurisdiction of the Claims Court over CDA disputes, Congress has chosen expansive, not restrictive, language." *Id*. (internal citations omitted).  Thus, "to be a claim 'relating to the contract' under the CDA, the claim must have some relationship to the terms or performance of a government contract."  *Id*. at 1312 (internal citations omitted).

B.      **Mr. Diaz Failed To Meet The Jurisdictional Prerequisites Of The CDA**

When a contractor has a claim against the Government pursuant to the CDA, the contractor is required to submit the claim in writing to the contracting officer. 41 U.S.C. § 7103(a)(1)-(2).  And when that claim is in excess of $100,000, the claim must be certified.  *Id.* The contracting officer is then required to issue a written decision on the contractor's claim. 41 U.S.C. § 7103(d).  If the contracting officer does not provide the contractor with full relief, the contractor may take an administrative appeal to the appropriate board of contract appeals. *See* 41 U.S.C. §§ 7104(a), 7105.  Alternatively, the contractor may file an action for *de novo* review in the Court of Federal Claims.  41 U.S.C. § 7104(b).  *See Alliant Techsys., Inc., v United States*, 178 F.3d 1260, 1264 (Fed. Cir. 1999) (explaining jurisdictional prerequisites are a CDA-qualified claim followed by a final decision of the contracting officer).

"It is a bedrock principle of government contract law that contract claims, whether asserted by the contractor or the Government, must be the subject of a contracting officer's final decision."  *See Raytheon Co. v. United States*, 747 F.3d 1341, 1354 (Fed. Cir. 2014). The Court

of Federal Claims has "jurisdiction to render judgment upon any claim by or against, or dispute

with, a contractor arising under section 7104(b)(1) of title 41, including . . . nonmonetary

disputes on which a decision of the contracting officer has been issued under section 6 of [the

CDA]." 28 U.S.C. § 1491(a)(2).  Of course, this requires that the contractor submit a claim to the

contracting officer and obtain a final decision on that claim (or a "deemed denial") before the

Court of Federal Claims may take jurisdiction pursuant to the CDA. *Volmar Const., Inc. v.*

*United States*, 32 Fed. Cl. 746, 757 (1995).

Mr. Diaz does not allege, nor can he demonstrate, that he satisfied the jurisdictional

prerequisites of the CDA by first submitting a written, certified claim to a Postal Service

contracting officer and obtaining a final decision.  *See Embiata*, 135 Fed. Cl. at 218.

Accordingly, the Court lacks jurisdiction to entertain Mr. Diaz's breach of contract claim in

Count I of the complaint.  *See Raytheon*, 747 F.3d at 1354.

### III.   The Court Lacks Jurisdiction To Entertain Mr. Diaz's State Law Claim

In Count IV of the complaint, Mr. Diaz alleges violations of Florida State law,

specifically the FMWA, Fl. Stat. § 448.110, and Article X, § 24(a) of the Florida

Constitution.  *See* Compl. at 12-13.  The claim is clearly not actionable in this Court.

The Tucker Act grants this Court jurisdiction only over cases against the *United States*

*Government*, seeking damages for certain claims founded upon the Constitution, statutes, or

regulations of the United States, as well as damages for breaches of contracts with the United

States.  28 U.S.C. § 1491(a)(1).  Furthermore, the Court does not have jurisdiction over

alleged violations of state laws because state statutes do not create a right to money damages

against the United States.  *Souders v. S.C. Pub. Serv. Auth.,* 497 F.3d 1303, 1307 (Fed.Cir.2007).

Accordingly, the Court should dismiss Count IV of the complaint for lack of subject matter

jurisdiction.

## IV.   Mr. Diaz's FLSA Claim IsTime-Barred

### A.   FLSA Statute Of Limitations

The Court should dismiss Mr. Diaz's FLSA claim (Count IV) for lack of jurisdiction because it is untimely under the applicable statute of limitations.  The FLSA expressly requires overtime claims to be filed within "two years after the cause of action accrued."  29 U.S.C. § 255(a).  A cause of action "for unpaid overtime . . . accrues at the end of each pay period when it is not paid."  *See Cooke v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988) (citations omitted).  However, actions "arising out of a willful violation may be commenced within three years after the cause of action accrued."  *Id*.  An employer willfully violates the FLSA if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *Adams v. United States*, 350 F.3d 1216, 1229 (Fed. Cir. 2003).  This Court is without jurisdiction to consider claims which are outside the statute of limitations.  *See Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988); *see also Legritte v. United States*, 104 Fed. Cl. 315, 317 (2012) (affirming dismissal of FLSA claims as time-barred);

A claim "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.,* when 'all events have occurred to fix the Government's alleged liability.'"  *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (*en banc*) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966).  Mr. Diaz's claim accrued, therefore, when he did not receive the pay allegedly due to him.

### B.   Mr. Diaz Was Required To File His Lawsuit Before April 2018 To Be Timely

Mr. Diaz alleges that he worked for a period of six years, the duration of the contract, or

12

from April 1, 2009 until March 31, 2015.  *See* Compl. ¶ 22b; *see also* Def. Ex. A at A5.  In

Count III, he further alleges that at all times during his employment, he "was treated as not

eligible to receive" the overtime required by the FLSA, *see id*. ¶ 65, the Postal Service failed to

pay him overtime "for workweeks in which he worked more than 40 hours, in violation of the

FLSA, *see id*. ¶ 67, and that the agency's violation was "willful." *Id*. ¶ 68.

Even assuming the facts pled in the complaint in the light most favorable to Mr. Diaz,

his FLSA claim is time-barred.  Here, Mr. Diaz performed the Postal Service contract from

1, 2009 until March 31, 2015, and filed his complaint on September 9, 2019.  At the latest, Mr.

Diaz's FLSA claim accrued in April 2015, when the Postal Service refused to pay him

overtime.  Under the FLSA's two-year statute of limitations, his cause of action ran two years

later in April 2017.  Under the three-year statute of limitations, his cause of action ran three years

later in April 2018.  Mr. Diaz filed his complaint in September 2019, well after both limitation

periods had expired.

## V.     Alternatively, Mr. Diaz's FLSA Claim Should Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted

In support of his FLSA claim Mr. Diaz alleges that the Postal Service "misclassified" him

as an independent contractor, instead of as an employee.  *See* Compl. ¶¶ 4, 10, 59.  Generally, the

FLSA covers "employees" but does not extend to independent contractors.  *See*, *e.g.*, *Rutherford*

*Food Corp. v. McComb*, 331 U.S. 722, 726-730 (1947); *see also Tetzlaff v. United States*, 2015

WL7585333 at *8- *10 (Fed. Cl.) (dismissing FLSA claim for a plaintiff that was an independent

contractor).

### A.     Mr. Diaz Does Not Allege He Was Appointed To The Postal Service – He Is Not An Employee

Mr.  Diaz's mere allegation that he was an "employee" of the Postal Service does not

make it so. The presumption is that a Federal employee serves by appointment. *See Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985); *see also Darden v. United States*, 18 Cl. Ct. 855, 859 (1989). This is no less true for the Postal Service.

Specifically, Section 1001(a) of Title 39 states that the "Postal Service shall appoint *all* officers and employees of the Postal Service." *See* 39 U.S.C. § 1001(a) (emphasis added). In other words, one can become a Postal Service "employee" *only* by "appointment." *Id*. Section 1001 has an exception: "The Postal Service may hire individuals as *executives* under employment contracts." *See* 39 U.S.C. § 1001(c) (emphasis added).

### B.    Mr. Diaz's Rights Are Governed Exclusively By His Contract

Mr. Diaz does not allege he was "appointed" to the Postal Service, and accordingly, he is not an employee of that agency. *See* 39 U.S.C. § 1001(a); *see Chu*, 773 F.2d at 1229. Nor does Mr. Diaz allege that he was "hired" as an "executive" under an "employment contract" with the Postal Service. *See* 39 U.S.C. § 1001(c). Mr. Diaz is an independent contractor and his rights are governed exclusively by his contract. *See*, *e.g.*, *Seh Ahn Lee*, 895 F.3d at 1367-1369 (individual who signed purchase order vendor (POV) contracts with the Voice of America agency were not employees but independent contractors whose rights were governed by their contracts). Alternatively, therefore, assuming, for argument's sake that Mr. Diaz's FLSA claim was not time-barred, which it is, the Court should dismiss the FLSA claim for failure to state a claim upon which relief can be granted.

### VI.    The Court Should Dismiss Mr. Diaz's *Quantum Meruit* Claim For Failure To State A Claim Upon Which Relief Should Be Granted

In Mr. Diaz's *quantum meruit* claim, Count II, incorporates the same factual allegations that he relies upon to support his breach of contract claim in Count I. *See* Compl. ¶ 26 (Count I

14

breach of contract) (incorporating ¶¶ 1-6, 9-16, 18, 23-25), ¶ 49 (Count II *quantum meruit*) (incorporating same).  For *quantum meriut*, Mr. Diaz essentially alleges the same facts as his breach claim, *i.e.*, that the Postal Service increased the number of mail boxes on his route without adjusting his compensation, thereby the agency received an additional benefit under the contract.  *See* Compl. ¶¶ 49, 51-53.  Because Mr. Diaz brings a breach claim under a valid, express contract, he cannot simultaneously bring a *quantum meruit* claim, which presumes the existence of an implied contract.  The Court should dismiss the Count II *quantum meruit* claim for failure to state a claim upon which relief can be granted.

A.     **Recovery In *Quantum Meruit* Can Only Occur When An Express Contract Is Invalid**

Recovery in *quantum meruit* is typically "based on an implied-in-law contract."  *See Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007).  This Court, however, does not have jurisdiction to entertain implied-in-law contracts.  *See Perri v. United States*, 340 F.3d 1337, 1343 (Fed. Cir. 2003).  Generally, however, a plaintiff may pursue a claim under a *quantum meruit* theory of recovery in limited circumstances when the contractor provides services to the Government in good faith under an express contract, but that contract is later rescinded for invalidity.  *See United States v. Amdahl*, 786 F.2d 387, 393 (Fed. Cir. 1986).  In *Amdahl*, the Federal Circuit explained this exception, as follows:

> Where a benefit has been conferred by the contractor on the government in the form of goods or services, which it accepted, a contractor may recover at least on a *quantum valebant* or *quantum meruit* basis for the value of the conforming goods or services received by the government prior to the rescission of the contract for invalidity. The contractor is not compensated *under* the contract, but rather under an *implied-in-fact contract*.

*Id*. (emphasis added).

The elements of an implied-in-fact contract are identical to those of an express contract:

"(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) 'actual authority' on the part of the government's representative to bind the government." *Biltmore Forest Broadcasting FM, Inc. v. United States,* 555 F.3d 1375, 1380 (Fed. Cir. 2009) (quoting *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (*en banc*)).

### B.    An Express Contract Precludes The Existence Of An Implied-In-Fact Contract

The Federal Circuit has long held that "[t]he existence of an express contract precludes the existence of an implied contract dealing with the same subject, unless the implied contract is entirely unrelated to the express contract."  *Atlas Corp. v. United States*, 895 F.2d 745, 754-55 (Fed. Cir. 1990), *cert. denied* 498 U.S. 811 (1990); *see also Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1344 (Fed. Cir. 2008) (the "court may only find an implied-in-fact contract when there is no express contract") (citing *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997) ("an implied-in-fact contract cannot exist if an express contract already covers the same subject matter").  Specifically, the existence of a valid, express contract precludes the existence of a *quantum meruit* dealing with the same subject matter.  *See Seh Ahn Lee v. United States*, 895 F.3d 1363, 1366, 1369-1370, 1373-1374 (Fed. Cir. 2018) (affirming the dismissal of *quantum meruit* claim for failure to state a claim upon which relief can be granted where an express contract existed).

### C.    Mr. Diaz Fails To Allege That His Contract Was Invalid

Here, Mr. Diaz does not allege in his complaint, nor can he demonstrate, that his contract with the Postal Service was void, invalid, or was rescinded.  *See Amdahl*, 786 F.2d at 393. Consequently, the "contract invalidity" exception that would sustain a separate *quantum meruit* claim does not apply.  *See Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, 1325-1326

(Fed. Cir. 2007).  Accordingly, the Court should dismiss the *quantum meruit* claim for failure to state a claim upon which relief can be granted.  *See Seh Ahn Lee*, 895 F.3d at 1373-1374.

## <u>CONCLUSION</u>

For the foregoing reasons, we respectfully request that the Court dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General


MARTIN F. HOCKEY, JR.
Acting Director


s/ Steven J. Gillingham
_____
STEVEN J. GILLINGHAM.
Assistant Director

s/ Joseph A. Pixley

OF COUNSEL:                              _____
                                         JOSEPH A. PIXLEY
WENDY A. HARRIS                          Trial Attorney
Attorney, Commercial and Appellate Division    Commercial Litigation Branch
U.S. Postal Service                      Civil Division
475 L'Enfant Plaza, S.W.                 Department of Justice
Washington, D.C. 20260                   P.O. Box 480
                                         Ben Franklin Station
                                         Washington, D.C. 20044
                                         Telephone: (202) 307-0843
                                         Facsimile: (202) 307-0972

May 13, 2021                             Attorneys for Defendant

18

**CERTIFICATE OF FILING**

I hereby certify that on the 13th day of May, 2021, a copy of the foregoing

"DEFENDANT'S MOTION TO DISMISS" was filed electronically.  I understand that notice of

this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties

may access this filing through the Court's system.


s/Joseph A. Pixley

19