# In the United States Court of Federal Claims

No. 20-1808C

Filed: October 14, 2021

**DAVID DIAZ,**

    *Plaintiff*,

v.

**THE UNITED STATES,**

    *Defendant*.

*Alfred Truesdell*, Truesdell Law, DeLand, FL, for Plaintiff.

*Joseph A. Pixley*, Trial Attorney, *Steven J. Gillingham*, Assistant Director, *Martin F. Hockey, Jr.*, Acting Director, *Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, with *Wendy Harris*, Of Counsel, Attorney, Commercial and Appellate Division, U.S. Postal Service, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    The designation between employee and independent contractor is not always clear. In this contract case, Plaintiff, David Diaz ("Mr. Diaz"), insists that he was misclassified as an independent contractor by the United States Postal Service ("USPS"). Mr. Diaz alleges that this misclassification caused a litany of issues related to his workload and compensation. (Tr. Compl. at 1, ECF No. 31). He now seeks redress for allegedly uncompensated overtime work. (Tr. Compl. at 8–9, 10, 12, 14). Before the Court is the United States' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim. (Def.'s Mot., ECF No. 36). For the reasons articulated below, the Court agrees with the United States that Mr. Diaz was not "misclassified" as an independent contractor and his contract ultimately governs available relief. Therefore, the Complaint must be **DISMISSED** in its entirety.

### I.    Background

    Mr. Diaz contracted with the USPS to deliver mail in rural areas of Florida beginning in 2005. (Tr. Compl.[1] at 32 (showing contract term beginning July 1, 2005)). Per the Contract

---

[1] Mr. Diaz's Transfer Complaint is accompanied by two exhibits but was filed as a single document. The ECF system consecutively paginated the exhibits as a continuation of the

Delivery Service ("CDS") agreement, "suppliers" are not designated as employees, but instead are independent contractors compensated based on the delivery trips made each day. (*See* Def.'s Mot. Ex. A at A1–A5, A7 (¶ 11 (f)(i))). In fact, the contract expressly states that an employee of the USPS cannot be a supplier, noting: "[p]ersons ineligible to become suppliers include: (1) Employees of the [USPS]." (Def.'s Mot. Ex. A at A7 (¶ 11 (f)(i))). Mr. Diaz is named as the "supplier" in the contract and relevant amendments of record. (Def.'s Mot. Ex. A at A1; *see also* Tr. Compl. at 16–32).

Compensation under Mr. Diaz's contract is not dependent on hours worked, but rather on mailboxes serviced. Per his original contract, Mr. Diaz earned an annual salary of $29,351.59 and delivered mail to 342 mailboxes from July 1, 2005 to March 31, 2009. (*Id.*).[2] Once that term elapsed, Mr. Diaz renewed his contract, agreeing to an immediate extension from April 1, 2009 to March 31, 2015. (*Id.* at 29). On January 19, 2012, the contracting officer mailed Mr. Diaz a letter acknowledging that a salary increase commensurate to the increase in work was necessary. (*Id.* at 24). This is officially reflected by a contractual amendment showing an enhanced salary of $41,823.62 for the delivery of mail to 426 mailboxes. (*Id.* at 29). Before a second renewal, the USPS again amended Mr. Diaz's contract, assigning a new salary of $63,606.96 for delivery to 745 mailboxes. (*Id.* at 23). This amendment was to take effect at the close of business on March 31, 2015, the controlling contract's expiration date. (*Id.*). Thereafter, Mr. Diaz and the USPS renewed the contract until March 31, 2019. (*Id.* at 19). That contract was further amended on May 1, 2017; the amendment increased Mr. Diaz's pay to $66,049.87 and assigned a new expiration date of March 31, 2021. (*Id.* at 16). Notably, the number of mailboxes to be serviced remained unchanged. (*Id.*).

On November 9, 2018, counsel for Mr. Diaz sent a letter to Deputy Managing Counsel for the USPS, alleging that, as the population grew in rural areas of Osceola County, Florida, the number of mailboxes Mr. Diaz had to service increased without a proportional raise in wages. (*See* Tr. Compl. at 40). Mr. Diaz further asserted that he was misclassified as an independent contractor and treated as an employee, thus he should be entitled to overtime pay and other protections under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.*, ("FLSA") and the Florida Minimum Wage Act. (*See id.* at 41). Litigation followed. (*See* Compl., ECF No. 1).

On September 9, 2019, Mr. Diaz filed a Complaint against the USPS in the Middle District of Florida.[3] (*Id.*). Mr. Diaz brought four claims: Count I (Breach of Contract), Count II

---

Transfer Complaint; the substance of the claims comprises the first 15 pages of the document and the exhibits can be found on pages 16–42. The Court will cite to the exhibits using the consecutive pagination assigned by the ECF system rather than exhibit identifiers.

[2] The timeline recounted here is drawn from Mr. Diaz's exhibits to the Transfer Complaint. However, the Court notes two caveats. First, the documents attached are predominantly amendments to underlying contracts and not the underlying contracts themselves. (*See* Tr. Compl. at 16–39). Second, the exhibits are incredibly obscured, low-quality images, and thus difficult to read at times. However, the timeline and early contract terms are not integral to the outcome of this Opinion and are included solely for illustrative purposes.

(Quantum Meruit), Count III (Unpaid Overtime and Minimum Wages under the FLSA), and Count IV (Unpaid Minimum Wage under the Florida Minimum Wage Act). (Compl. 6–14). On February 13, 2020, the parties consented to confer jurisdiction to a U.S. Magistrate Judge, (ECF No. 15), which was granted on February 18, 2020, (ECF No. 18). In response to Mr. Diaz's claims, the USPS moved to dismiss Count I and Count II for lack of subject matter jurisdiction, further arguing that Mr. Diaz did not abide by the terms delineated in the Contract Disputes Act ("CDA"). (ECF No. 20). On June 26, 2020, United States Magistrate Judge Embry J. Kidd granted in part and denied in part the USPS's Motion to Dismiss. (ECF No. 21). The Motion was granted to the extent that the case be transferred in total to the Court of Federal Claims pursuant to 28 U.S.C. § 1292(d)(4)(B). (*Id.*).

## II. Discussion

Mr. Diaz's Transfer Complaint mirrors his original Complaint: Count I (Breach of Contract), Count II (Quantum Meruit), Count III (Unpaid Overtime and Minimum Wages), and Count IV (Unpaid Minimum Wage). (Tr. Compl. at 6–14). Before the Court is the United States' Motion to Dismiss Mr. Diaz's Counts I, III, and IV pursuant to RCFC 12(b)(1), lack of subject matter jurisdiction, and claims II and III pursuant RCFC 12(b)(6), failure to state a claim for which relief can be granted. (Def.'s Mot. at 8–16). The Court addresses each argument in turn. Ultimately, the Court agrees that Mr. Diaz was not misclassified as an independent contractor and finds that his claims are not properly before this Court. Thus, the Transfer Complaint is dismissed.

### A. Standard of Review

Under RCFC 12(b)(1), the burden of establishing subject matter jurisdiction rests with the plaintiff, who must do so by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). This Court's jurisdiction to entertain claims and grant relief depends on the extent to which the United States has waived sovereign immunity. *United States v. Testan*, 424 U.S. 392, 399 (1976). When faced with a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the Court must assume that all undisputed facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Moreover, the Court may look to evidence outside of the pleadings to ascertain the propriety of its exercise of jurisdiction over a case. *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991), *aff'd in relevant part*, *Martinez v. United States*, 281 F.3d 1376 (Fed. Cir. 2002).

A motion to dismiss for "failure to state a claim upon which relief can be granted" is appropriate under RCFC 12(b)(6) only "when the facts asserted by the claimant do not entitle [it] to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). Like motions based on RCFC 12(b)(1), in considering a motion to dismiss for failure to state a claim, the Court "must accept as true all of the allegations in the [pleading]" and "must indulge all reasonable inferences in favor of the nonmovant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001). For a claim to be properly stated, the pleading "must contain sufficient factual

---

[3] M.D. Fla. Case No. 19-cv-01482.

3

matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007)). Therefore, only a pleading that states a plausible claim for relief survives a motion to dismiss. *Ashcroft*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

      B. *Mr. Diaz was properly classified as an independent contractor.*

By Mr. Diaz's own admission, "[t]he classification of Diaz as a contractor when he performed essentially the same tasks as employee mail carriers is at the heart of all of the issues in this case." (Pl.'s Resp. at 2, ECF No. 37). Consequently, addressing the merits of the United States' Motion requires the Court to find that Mr. Diaz was unquestionably an independent contractor. The Court therefore begins by discussing the distinction between an employee and an independent contractor for the federal government.

Mr. Diaz alleges that he was classified as an independent contractor, despite being regulated as an employee, and should therefore be reclassified and entitled to protections under the FLSA. (*See generally* Tr. Compl.). The FLSA imposes minimum wage, overtime, and record-keeping requirements for the protection of employees. *See* 29 U.S.C. §§ 206(a) (minimum wage), 207 (overtime), 211(c) (record-keeping). Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Ark.-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981) (quoting 29 U.S.C. § 202(a)). The FLSA applies only to employees. With respect to who constitutes as an employee, "[t]he [FLSA] itself provides little guidance on the term's meaning. It defines an employee as 'any individual employed by an employer. . ..'" *Steelman*, 473 F.3d at 128 (quoting 29 U.S.C. § 203). Whether Mr. Diaz is an "employee" of the USPS is a legal question, not a "factual allegation." *Berry v. United States*, 27 Fed. Cl. 96, 100 (1992) ("[T]he rights of civilian and military public employees against the Government do not turn on contract doctrines, but are matters of legal status."). Therefore, a plaintiff cannot assert by merely pleading, in a conclusory fashion, that he has employee status. *Twombly*, 550 U.S. at 555 (holding that in ruling upon an RCFC 12(b)(6) motion, the Court must accept as true the undisputed *factual* allegations in the complaint).

In considering his classification, Mr. Diaz urges the Court to ignore the appointment requirement and implement the "economic realities" test utilized by the other federal courts. (Pl.'s Resp. at 8). Under that test, to determine whether an individual or entity is an employer, the court considers whether the alleged employer: "(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010). However, the use of the economic realities test, or any balancing test for that matter, would be a misapplication of the law as it relates to federal employees.

Employees of federal agencies are uniquely situated in that they serve by appointment. *See Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985); *see also Darden v. United States*, 18 Cl. Ct. 855, 859 (1989). In determining whether an employer-employee relationship exists, prior courts have referred to the rules of federal employment. 39 U.S.C. § 1001(a); *see also Wade v. United States*, 136 Fed. Cl. 232, 244 (2018) ("the court looks to the relevant statutory language and implementing regulations, as well as to the hiring documents," to determine the type of federal employment at issue.). Section 1001(a) of Title 39 states that the "Postal Service shall appoint *all* officers and employees of the Postal Service." 39 U.S.C. § 1001(a) (emphasis added). Thus, one can only become a USPS "employee" by "appointment."[4]

The Federal Circuit imposes a "well-established principle that, absent specific legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government.'" *Harrison v. United States*, 120 Fed. Cl. 533, 544–45 (2015) (internal citations omitted); *accord Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004) ("Like all federal employees, Appellants served by appointment. The terms of their employment and compensation, consequently, were governed exclusively by statute, not contract."). Courts have often refused to give effect to government-fostered expectations that might have otherwise formed the basis for a contract in the private sector. *See Kizas v. Webster*, 707 F.2d 524, 535 (D.C. Cir. 1983) (finding that promises of extra compensation in exchange for extra services did not create a contract). Thus, "questions raised [regarding] the scope of employer/employee definitions under the [FLSA], and the proper interpretation of the . . . test for distinguishing employees from independent contractors, are beside the point." *Guevara v. INS*, 954 F.2d 733, 733 (Fed. Cir. 1992) (unpublished table decision)

Mr. Diaz does not allege that he was "appointed" to the USPS pursuant to 39 U.S.C. § 1001(c). Mr. Diaz argues that irrespective of not being appointed, he was treated as, and his performance is comparable to that of, an employee at the USPS. (Tr. Compl. at 2). Mr. Diaz asserts that the level of control the USPS exerted is analogous to what an employee would experience. (*Id.*). Each argument Mr. Diaz advances may have been relevant if the dispute at hand was not against a federal agency. Mr. Diaz has not alleged facts showing that he was "appointed" to the USPS, and accordingly, he has not alleged sufficient facts to overcome the presumption that he is not an independent contractor. 39 U.S.C. § 1001(a); *Chu*, 773 F.2d at 1229; *Watts*, 814 F.2d at 1578; *Horner v. Acosta*, 803 F.2d 687, 693–94 (Fed. Cir. 1986). Further, based on the amendments attached to Mr. Diaz's Complaint, he executed multiple agreements over the course of several years containing the apparent mutual understanding that he was an independent contractor. *Land v. Dollar,* 330 U.S. 731, 735 n.4 (when a question of jurisdiction is raised, either by a party or by the court on its own motion, "the court may inquire, by affidavits or otherwise, into the facts as they exist."); *see also Rocovich*, 933 F.2d 994.

Because Mr. Diaz was never appointed as a federal employee and does not otherwise plead any basis entitling him to the status as a federal employee, the Court finds that he was properly designated as an independent contractor. Based on the foregoing, Mr. Diaz's arguments

---

[4] There is one exception to this rule in that the USPS "may hire individuals as *executives* under employment contracts." *See* 39 U.S.C. § 1001(c) (emphasis added). That exception is irrelevant here.

are unsupported by the law. Against this backdrop, the Court will turn to the merits of the United States' Motion to Dismiss.

### C. The Court lacks jurisdiction over Count I of Mr. Diaz's Complaint.

Based on the finding that Mr. Diaz was properly classified as an independent contractor, the Court must look to his contract to determine his enforceable rights. The CDS contract specifically invokes the CDA, (Def.'s Mot. Ex. A at A6), mandating that a contractor submit a written claim to a contracting officer and to receive a final decision as a jurisdictional prerequisite to filing suit in this Court. 41 U.S.C. § 7103(a)(1)–(2). The United States asserts that this Court lacks jurisdiction because Mr. Diaz failed to submit a written claim to a contracting officer prior to this suit, and, thus, did not receive a final decision. (Def.'s Mot. at 8–11). In response, Mr. Diaz does not dispute that he did not submit a claim. Instead, he again tethers his argument to his alleged misclassification as an independent contractor. (Pl.'s Resp. at 10). That argument is unavailing.

The CDA applies to certain types of contracts with the Federal Government, including contracts for the procurement of services. 41 U.S.C. § 7102(a)(2). The CDA provides a procedure for resolving any "claim by a contractor . . . relating to a contract[.]" 41 U.S.C. § 7103(a)(1). Actions brought before the Court of Federal Claims under the CDA must be based on the same claim previously presented to and denied by the contracting officer. *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003).

Under the CDA, a contractor must first file a written claim with the relevant contracting officer. 41 U.S.C. § 7103. Claims above $100,000 must be certified. *Id*. Upon receiving a final decision, or if a final decision is not made within the required period, a USPS contractor may then appeal the denial of his or her claim to the USPS Board of Contract Appeals or this Court. 41 U.S.C. §§ 7105(d), 7104(b)(1). The failure of a USPS contractor to comply with these specific administrative presentment requirements of the CDA is enough to strip this Court of jurisdiction. *See Embiata v. United States*, 135 Fed. Cl. 213, 218 (2017). "When the [CDA] applies, it provides the exclusive mechanism for dispute resolution; the [CDA] was not designed to serve as an alternative administrative remedy, available at the contractor's option." *Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995). Furthermore, the Court of Federal Claims has long held that claims relating to breach of contract and overall contract management or administration "must be brought under the CDA." *See Diversified Maint. Sys., Inc. v. United States*, 103 Fed. Cl. 431, 435 (2012) (citing *Dalton*, 50 F.3d at 1017).

Mr. Diaz's CDS contract specifically invokes, and is therefore governed by, the CDA, 41 U.S.C. § 7103 *et seq*. (Def.'s Mot. Ex. A at A1). In this action, he seeks to recover "approximately $110,000." (Tr. Compl. at 42). Under the CDA, for claims over $100,000 such as this one, a contractor is required to first submit a written, certified claim to a contracting officer and to receive a final decision as a jurisdictional prerequisite to filing suit in the Court of Federal Claims. 41 U.S.C. § 7103. Thus, for Mr. Diaz's claim to succeed, it must conform to the requirements of the CDA.

Mr. Diaz argues that, should the CDA apply to his contract, the letter sent from to Deputy Managing Counsel for the USPS would qualify as a claim for purposes of the CDA. (Pl.'s Resp.

at 6). The Court disagrees. Although the CDA does not define the term "claim," the Federal Circuit has adopted the definition in the Federal Acquisition Regulation ("FAR"). *See, e.g.*, *H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564–65 (Fed. Cir. 1995). The FAR generally defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101. There is no requirement in the CDA that a contractor's "claim" be submitted in any particular form or use any particular wording. All that is required is that the contractor submits in writing to the contracting officer, or an authorized representative of the contracting officer, a clear and unequivocal statement that gives the government representative adequate notice of the basis and amount of the claim. *See Sarang Corp. v. United States*, 76 Fed. Cl. 560 (2007).

Per 48 C.F.R. § 1942.202-70, contracting officers may designate "an appropriately qualified Government employee to act as the Authorized Representative of the Contracting Officer (AR/CO)." The FAR further dictates that "such designation shall apply to a single contract, must be in writing, and shall define the scope and limitations of the [authorized representative]'s authority." § 1942.202-70. Mr. Diaz has not alleged that the individual who received Mr. Diaz's letter is an authorized representative and has not shown a writing which would substantiate that claim. Thus, the Court cannot find that counsel for the agency is an authorized representative under the requirements of the FAR. Further, the communication sent from his counsel lacks the requisite certification for claims over $100,000. And so, even if Deputy Managing Counsel were an authorized representative, the claim would still miss the mark required under the CDA.

Finding that Mr. Diaz was an independent contractor takes the wind out of his proverbial sails. To confer jurisdiction, Mr. Diaz must comply with the requisites of the CDA, but he did not. Thus, the Court lacks jurisdiction to entertain Mr. Diaz's breach of contract claim, and it must be dismissed. *See Raytheon Co. v. United States*, 747 F.3d 1341, 1353 (Fed. Cir. 2014).

### D. Count II of Mr. Diaz's Complaint fails to state a claim.

Related to his breach claim, Mr. Diaz brings a claim in quantum meruit, generally incorporating the same factual allegations relied upon to support his breach of contract claim. (*See* Tr. Compl. ¶ 26 (Count I Breach of Contract) (incorporating ¶¶ 1–6, 9–16, 18, 23–25), ¶ 49 (Count II Quantum Meruit) (incorporating same)). The United States argues that Mr. Diaz's claim in quantum meruit should be dismissed because he has an express, valid contract, and thus fails to rise to the level of a claim for which relief can be granted. (Def.'s Mot. 14–17). Countering this, Mr. Diaz reiterates the same arguments against dismissal of the breach claim, summarily stating that the "CDA does not apply to employees," and the "same argument would apply to [his] quantum meruit claim in Count II." (*See* Pl.'s Resp. at 3). Mr. Diaz fails to expound on that reasoning to any meaningful degree. The Court agrees with the United States.

The elements of an implied-in-fact contract are identical to those of an express contract. *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997). To establish the existence of an implied-in-fact contract, the following elements must be present: (1) mutuality of intent to contract; (2) consideration; (3) "lack of ambiguity in offer and acceptance;" and (4) that the "government representative whose conduct is relied upon [has] actual authority to bind the

government in contract." *Lewis v. United States*, 70 F.3d 597, 600 (Fed. Cir. 1995) (citation omitted). Moreover, a contract is implied-in-fact if it is founded upon a meeting of the minds. *Trauma Serv. Group*, 104 F.3d at 1326. The parties' tacit understanding is inferred from the conduct of the parties in light of the surrounding circumstances. *Id.* One who enters into an agreement with the United States "takes the risk of accurately ascertaining the authority of the agents who purport to act for the Government, and this risk remains with the contractor even when the Government agents themselves may have been unaware of the limitations on their authority." *Id.* at 1325 (citing *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947)). If a contract is unenforceable against the Government, "it is only fair and just that the Government pay for . . . services rendered and accepted under it." *Gould, Inc. v. United States*, 67 F.3d 925, 930 (Fed. Cir. 1995).

This Court has jurisdiction over quantum meruit recovery when a contractor provides goods or services to the government in good faith under an express contract, but that contract is later rescinded for invalidity. *See United States v. Amdahl*, 786 F.2d 387, 393 (Fed. Cir. 1986); *see also Int'l Data Prod. Corp. v. United States*, 492 F.3d 1317, 1325 (Fed. Cir. 2007); *United Pac. Ins. Co.*, 464 F.3d at 1329–34. By asserting a claim for breach of contract and relying on the same operative facts for a claim in quantum meruit, Mr. Diaz recognized the contract's validity. Thus, the Court finds that Mr. Diaz has a valid contract with the USPS—a fact that precludes a quantum meruit claim.

"[O]nly a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, 556 U.S. at 678. Recovery in quantum meruit is based upon a contract implied in law. *See Perri v. United States*, 340 F.3d 1337, 1343 (2003). Establishing that Mr. Diaz was not misclassified as an independent contractor, the Court finds that he was operating under a valid, express contract. There is no explicit claim that the contract was invalid, only that Mr. Diaz was unsatisfied with its terms. Because Mr. Diaz does not articulate that his contract with the USPS was void, invalid, or rescinded, to invoke the "contract invalidity" exception that would sustain a quantum meruit claim, the Court dismisses Count II for failure to state a claim upon which relief can be granted. *See Int'l Data Prods. Corp.*, 492 F.3d 1325–26 (Fed. Cir. 2007).

E. *Count III of Mr. Diaz's Complaint fails to state a claim.*

The United States argues that Mr. Diaz's FLSA claim should be dismissed because it was filed outside of the Statute of Limitations. (Def.'s Mot. at 12–13). Mr. Diaz counters that the United States' argument is premature because the parties have not engaged in discovery and could not know which contract would be controlling here. (Pl.'s Resp. at 9). However, the Court need not address this argument in-depth, as it is disposed of by the holding that Mr. Diaz is an independent contractor.

Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Barrentine*, 450 U.S. 739 (footnote omitted) (quoting 29 U.S.C. § 202(a)). Under the FLSA, only *employees* are entitled to overtime and minimum-wage compensation. *See, e.g., Rutherford Food Corp. v. McComb*, 331 U.S. 722, 726–30 (1947). Relevant to Mr. Diaz, it is well-settled that independent contractors do not enjoy FLSA's protections. *See Rutherford*, 331

U.S. 729. Based on the finding that Mr. Diaz was properly characterized as an independent contractor and not an employee, the Court finds that the FLSA does not apply. As such, Count III fails to state a claim on which relief may be granted and must be dismissed.

    *F. The Court lacks jurisdiction over Count IV of Mr. Diaz's Complaint.*

Relatedly, the United States argues that Mr. Diaz's related minimum wage claim based on Florida State Law should be dismissed because this Court does not have jurisdiction over state law claims. (Def.'s Mot. at 11). Mr. Diaz disagrees and argues that, should this Court not have jurisdiction, the state law claim should instead be transferred back to Florida. (Pl.'s Resp. at 3).

This case was transferred, in its entirety, pursuant to 28 U.S.C. § 1631. (ECF No. 21 at 7–8, n.4). Section 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . *in which the action or appeal could have been brought at the time it was filed or noticed*, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred.

28 U.S.C. § 1631 (emphasis added). Notably, though there was a partial Motion to Dismiss the state law claim pending before the Middle District of Florida, the District Court *sua sponte* transferred the state law claim to the Court of Federal Claims. The transferring judge stated that "for the sake of judicial economy and efficiency, the entire action should be transferred to the Court of Federal Claims." (ECF No. 21 at 9). However, though it seems logical to bind the FLSA and Florida claims together, it was not permissible under this Court's jurisdictional requirements.

Per 28 U.S.C. § 1367, district courts can exercise supplemental jurisdiction over related state law claims. However, Section 1367 does not confer supplemental jurisdiction upon the Court of Federal Claims. *See Hall v. United States*, 69 Fed. Cl. 51, 57 (2005); *see also Trek Leasing, Inc. v. United States*, 62 Fed. Cl. 673, 678 (2004) (holding that 28 U.S.C. § 1367 applies only to federal district courts.). The Court of Federal Claims has limited jurisdiction over "claim[s] against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). Thus, Mr. Diaz's claim based on state law has no place before this Court.

It appears that this claim was transferred in error, thereby producing understandable confusion. Pursuant to the Tucker Act and acknowledging that the federal courts do not have original jurisdiction over state law claims, this Court agrees with the United States in that it does not have jurisdiction to entertain Count IV of Mr. Diaz's Transfer Complaint. Even so, transferring Mr. Diaz's single claim back to Florida would be futile. To establish the state law claim, Mr. Diaz asserts identical facts to his FLSA claim. (*Cf.* Tr. Compl. at 10–12 with 12–14). The success of either claim requires a finding that Mr. Diaz was an employee, which he was not.

Because he has failed to bring a cognizable claim under the FLSA, the claim based on identical facts and basic requirements also fails, therefore transfer would be futile. *See Pollack v. United States*, 498 F. App'x 19 (Fed. Cir. 2012) (affirming Court of Federal Claims' decision not to transfer case over which it lacked jurisdiction when transfer would be futile).

Because this Court cannot exercise supplemental jurisdiction over state law claims, it lacks jurisdiction to hear Mr. Diaz's state law claim. Based on the finding that the FLSA does not apply, transfer based on similar arguments would be futile and Count IV of Mr. Diaz's Complaint must be dismissed.

### III.   Conclusion

The Court holds that Mr. Diaz was properly classified as an independent contractor. Thus, Mr. Diaz cannot establish that his claims are properly before the Court. Therefore, Mr. Diaz's Complaint must be **DISMISSED** in its entirety.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**



s/     *David A. Tapp*
DAVID A. TAPP, Judge